UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GABBANELLI ACCORDIONS & IMPORTS, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-4404 |
| | § | |
| HERMES MUSIC COMPANY, *et al.*, | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants Hermes International, Inc., Hermes Trading Co., and 3 Crowns Distributors's (collectively, "Defendants") partial motion to dismiss.[1] Dkt. 7 (motion filed by Hermes International and Hermes Trading Co.); *see also* Dkt. 22 (joining 3 Crowns in the pending motion). Plaintiff Gabbanelli Accordions and Imports, LLC ("Gabbanelli") responded (Dkt. 10) and Defendants replied (Dkt. 12). Having considered the motion, response, reply, pleadings, and applicable law, the court is of the opinion that Defendants' motion (Dkt. 7) should be GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

This is an intellectual property dispute. Gabbanelli manufactures and sells its own brand of high-quality accordions.[2] Dkt. 5 at 4. The Hermes defendants also sell "various brands of high-quality accordions." Dkt. 7 at 2.

---

[1]In addition to the three Defendants bringing this motion, Gabbanelli's complaint names a number of other Hermes entities. Dkt. 5. However, based on the record filed with the court, none of the other Hermes entities was ever served or made an appearance in the case.

[2]In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

### A. The 2000 and 2014 Settlement Agreements

Gabbanelli has brought two previous suits against Hermes entities—one in 2000 and one in 2013—for alleged intellectual property infringement. Dkt. 5 at 8–9. Both suits resulted in settlement agreements.[3]

First, in 2000, Gabbanelli filed suit against eight different Hermes entities in federal district court (Civil Action No. H-00-0352) (the "2000 Suit"). Dkt. 7-1 at 2. The parties ultimately resolved the case via settlement agreement. Dkt. 7-1 (the "2000 Settlement Agreement"). The 2000 Settlement Agreement provided, *inter alia*, that Hermes would "stop the promotion and sale of any accordion containing marks that are identical to, or confusingly similar to," the Gabbanelli trade dress. Dkt. 7-1 at 3. The Agreement defined "Gabbanelli trade dress" as "the overall appearance of the accordions sold and distributed by Gabbanelli consisting of, but not limited to, the color scheme, the location and design of the buttons and keys on the accordions, the engravings on the accordions, and the ornamentation attached to the accordions."[4] *Id.* at 3.

Despite the 2000 Settlement Agreement, the parties continued to clash. In 2013, Gabbanelli again filed suit against multiple Hermes entities for alleged infringement (Civil Action No. 4:13-cv-2044) (the "2013 Suit"). In 2014, the parties entered into another settlement agreement (the "2014

---

[3]At the motion to dismiss stage, the court may consider documents outside the pleadings if they are "referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Here, Gabbanelli refers to both settlement agreements in its complaint and the agreements are central to Gabbanelli's breach of contract claims. *See* Dkt. 5.

[4]The 2000 Settlement Agreement also requires the Hermes defendants to stop infringing certain Gabbanelli trademarks. Dkt. 7-1 at 4 (prohibiting the alleged infringement of U.S. Trademark Registration Nos. 1,996,735 and 2,123,429). However, those trademarks are not the trademarks at issue in the current suit. *See* Dkt. 5 at 10, 16–17 (alleging infringement of U.S. Trademark Registration Nos. 4,391,931, 4,391,927, and 4,391,903).

Settlement Agreement"). Dkt. 8 (sealed). The 2014 Settlement Agreement prohibited Hermes from "represent[ing] to the public that accordions from parties other than Gabbanelli . . . are related to, affiliated with, sponsored by, associated with or connected to Gabbanelli, the Gabbanelli name, or Gabbanelli trademark/trade name." *Id.* at 3. The 2014 Settlement Agreement also prohibited Hermes from making "false, deceptive, or misleading statements about Gabbanelli accordions." *Id.*

**B.     The Current Suit**

Now, in this third suit, Gabbanelli again alleges that Hermes entities have engaged in trade dress and trademark infringement. First, Gabbanelli contends that Defendants have infringed on Gabbanelli's "red, white, and green trade dress" and U.S. Trademark Registration No. 4,391,931 (the "931 Mark") by selling tequila in packaging that resembles Gabbanelli's accordions. Dkt. 5 at 10. Further, Gabbanelli alleges that the tequila packaging includes the name "CANTABELLA"—a Hermes-owned mark—on the package. *Id.* Gabbanelli also alleges that Defendants hired Ramon Ayala, a well-known accordionist, to promote the offending tequila by using a red, white, and green "CANTABELLA" accordion for performances and advertisements. *Id.* at 11. Finally, Gabbanelli alleges that Defendants have sold "additional accordions violating Gabbanelli's red, white, and green trade dress." *Id.* at 14. According to Gabbanelli, Defendants engaged in these activities "intend[ing] . . . to create an association in consumers' minds" between Gabbanelli and Defendants' products. *Id.* at 15.

Second, Gabbanelli alleges that Defendants have sold accordions in violation of Gabbanelli's trademarks. Specifically, Gabbanelli asserts that Defendants have sold Sonola-brand accordions with marks that are "substantially similar" to Gabbanelli-owned U.S. Trademark Registration Nos. 4,391,927 and 4,391,903 (the "927 Mark" and "903 Mark," respectively). *Id.* at 16. Gabbanelli

3

claims that it sent Defendants a cease and desist letter relating to the offending accordions, but Defendants did not respond. *Id.* at 17.

Third, Gabbanelli contends that Defendants' alleged infringements also breach both the 2000 and 2014 Settlement Agreement. *Id.* at 23–24. Gabbanelli argues that Defendants' alleged unauthorized use of Gabbanelli's green, white, and red trade dress violates the 2000 Settlement Agreement. Dkt. 10 at 9. Gabbanelli also argues that Defendants' infringing activities violate the 2014 Settlement Agreement. *Id.* at 11.

## II. STANDARD OF REVIEW

Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the nonmovant has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Instead, "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012).

### III. ANALYSIS

Although Gabbanelli brings a number of claims, Defendants only move to dismiss Gabbanelli's claims for breach of contract and violation of the Texas anti-dilution statute. Dkt. 7.

**A.     Texas Statutory Dilution Claim**

First, Defendants argue that Gabbanelli has failed to state a claim under the Texas anti-dilution statute, Texas Business & Commerce Code § 16.103. Section 16.103 provides protection against infringement for owners of "famous" marks. § 16.103(a) (providing remedies to owners of marks that are "famous and distinctive"); *Bulbs 4 East Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1172 (S.D. Tex. 2016) (Harmon, J.) (noting that the Texas anti-dilution statute only provides protection for "famous"—as opposed to "distinctive"—marks, consistent with federal law). Defendants argue that Gabbanelli's complaint fails to allege that the marks at issue are "famous" within the meaning of the statute. Dkt. 7 at 4.

A mark is "famous" if it is "widely recognized by the public throughout [Texas] or in a geographic area in [Texas] as a designation of [the] source of the goods or services of the mark's owner." § 16.103(b). The court may consider a number of factors in determining whether a mark

is famous. *Id.* These factors include the extent and geographic reach of advertisement of the mark. *Id.*

Defendants attempt to undercut Gabbanelli's anti-dilution claim by arguing that Gabbanelli has not sufficiently pled that "the general Texas public actually has any idea who or what a Gabbanelli is." Dkt. 12 at 1. However, in considering a motion to dismiss, the court must generally accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Here, Gabbanelli has specifically pled that its trademarks and trade dress "are widely recognized by the public" in Texas "as a designation of the source of [Gabbanelli's] goods." Dkt. 5 at 21. This factual allegation directly tracks the statutory definition of "famous" under § 16.103. *See* § 16.103(b). Moreover, Gabbanelli's complaint also includes a detailed account of Defendants' widespread advertisement of allegedly infringing products via social media. *Id.* at 11–13. Gabbanelli's complaint sufficiently alleges that its trademarks and trade dress are "famous" under § 16.103, and Defendants' motion to dismiss this claim is DENIED.

**B.     Breach of Contract Claims**

Next, Defendants contend that Gabbanelli has failed to state a claim for breach of contract as to both the 2000 and the 2014 Settlement Agreements. Dkt. 7 at 8–9. Defendants argue that Gabbanelli has not identified which provisions of the Agreements Defendants allegedly breached. *Id.*

1.     *The 2014 Settlement Agreement Merger Clause*

As a threshold matter, Defendants argue that the court should dismiss Gabbanelli's claims for breach of the 2000 Settlement Agreement because the 2014 Settlement Agreement superseded all prior agreements between the parties. *Id.* at 9. The 2014 Settlement Agreement contains a

merger clause. Dkt. 8 at 6. The clause provides that the 2014 Settlement Agreement "sets forth the entire understanding and agreement between the Parties *as to the subject matter hereof*, and merges and supersedes all prior written or verbal understandings, promises, agreements, arrangements, and representations between the Parties." *Id.* (emphasis added). Defendants argue that this merger clause "unambiguously captures the Parties' intent to supersede all prior written agreements between them," including the 2000 Settlement Agreement. Dkt. 12 at 4.

Under Texas law, "[m]erger occurs when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter." *Texas A&M Univ.-Kingsville v. Lawson*, 127 S.W.3d 866, 872 (Tex. App.—Austin 2004, pet. denied). The issue of whether an earlier contract is merged into a later one is "largely a matter of intention of the parties." *Id.* "When a contract's meaning is unambiguous, our task is to determine the parties' intentions as expressed in the written instrument." *Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 906 (Tex. 2016). However, the court must interpret contracts holistically. *Id.* No single provision of a contract is to be read alone; rather, "all provisions are 'considered with reference to the whole instrument.'" *Id.* (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). The court must construe contracts "from a utilitarian standpoint, bearing in mind the particular business activity sought to be served." *Id.* at 906–07 (quoting *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996)).

Here, the 2014 Settlement Agreement unambiguously states that it supersedes all previous agreements "as to the subject matter hereof." Dkt. 8 at 6. Contrary to Defendants' argument, the 2014 Settlement Agreement does not supersede "*all* prior representation and agreements between the parties." Dkt. 7 (emphasis added); *see West v. Quintanilla*, 573 S.W.3d 237, 244 (Tex. 2019) (holding that a merger clause in a 2015 contract did not preclude consideration of a prior contract

7

between the parties because the 2015 contract, "by its own terms . . . is integrated only as to the parties' agreements relating to the 'subject matter' it addresses, not as to all prior or contemporaneous agreements between the parties"). Defendants' proffered interpretation of the contract is plausible only if the second half of the merger clause—not even a whole sentence—is read in isolation. *See* Dkt. 8 at 6. This the court cannot do.

Defendants also argue that the 2000 and 2014 Settlement Agreements concern the same subject matter. Dkt. 12 at 4. Therefore, according to Defendants, the 2014 Settlement Agreement controls even in light of the limiting language in the merger clause. Dkt. 12 at 4. In reaching this conclusion, Defendants argue that both the 2000 and the 2014 Settlement Agreements concern Defendants' alleged unauthorized uses of the '931 Mark and the green, white, and red trade dress. *Id.*

However, this assertion is demonstrably false. The 2000 Settlement Agreement specifically provides that its purpose is to "settle, compromise, and resolve all of the differences, disagreements, and disputes which exist or may exist between [the parties] relating to the subject matter of the [2000 Suit]." Dkt. 7-1 at 2. The 2000 Settlement Agreement goes on to create a number of detailed obligations for both Hermes and Gabbanelli, including: (1) requiring Hermes to cease trademark infringement as to Gabbanelli's '735 and '429 Marks; (2) requiring Hermes to "stop the promotion and sale of . . . any accordion that has an overall design and appearance that is identical to, or confusingly similar to, the Gabbanelli trade dress"; and (3) requiring Gabbanelli to provide Hermes with preferential pricing for future orders of Gabbanelli accordions. *Id.* at 3–5.

In contrast, the 2014 Settlement Agreement provides that its purpose is to "settle, compromise, and resolve" all disputes "relating to the subject matter of the [2013 Suit]." Dkt. 8 at 2. The 2014 Settlement Agreement creates another, distinct set of obligations as to both Hermes and

Gabbanelli, including: (1) prohibiting both parties from "mak[ing] false, deceptive, or misleading statements" about the other's accordions; (2) prohibiting Hermes from representing that non-Gabbanelli accordions, specifically the "Anacleto" line of accordions, are affiliated with Gabbanelli; and (3) prohibiting certain marketing tactics by Hermes, including referring to Anacleto accordions as the "new Gabbanellis." Dkt. 8 at 3–4.

Therefore, based on the plain language of the documents, the 2000 and 2014 Settlement Agreements do not concern the same subject matter. It is irrelevant that Hermes' actions allegedly breached both Agreements; one action may breach two separate, independent obligations. *See* Dkt. 12 at 4. The merger clause in the 2014 Settlement Agreement does not subsume the 2000 Settlement Agreement, and Gabbanelli may bring claims under both Agreements.

2. *Breach of the 2000 Settlement Agreement*

Defendants move to dismiss Gabbanelli's claim for breach of the 2000 Settlement Agreement on the ground that Gabbanelli's complaint "does not describe what obligation Hermes failed to live up to." Dkt. 7 at 8. However, Gabbanelli's complaint specifically identifies two "relevant parts" of the 2000 Settlement Agreement: (1) Hermes's agreement that Gabbanelli's trade dress was "valid and protectable"; and (2) Hermes's agreement to stop the promotion and sale of accordions that include "any designation that is identical to, or confusingly similar to," Gabbanelli's trade dress. Dkt. 5 at 9. Gabbanelli then alleges that Hermes is selling accordions that violate Gabbanelli's trade dress. *Id.* at 14. These allegations are sufficient to state a claim for breach of the 2000 Settlement Agreement.

3. *Breach of the 2014 Settlement Agreement*

However, Gabbanelli has failed to state a claim as to the 2014 Settlement Agreement. Gabbanelli simply notes the existence of the 2014 Settlement Agreement without identifying any

specific provisions that Defendants allegedly breached. *See* Dkt. 5 at 9. Gabbanelli later alleges that Defendants breached the 2014 Settlement Agreement, but does not specify which of the numerous alleged actions by Defendants constituted the breach. *Id.* at 24. Therefore, Defendants' motion to dismiss is GRANTED as to Gabbanelli's claim for breach of the 2014 Settlement Agreement. Gabbanelli's alternative motion for leave to amend is GRANTED as to this claim. *See* Dkt. 10 at 17.

### IV. CONCLUSION

Gabbanelli's First Amended Complaint (Dkt. 5) adequately states a claim for breach of the 2000 Settlement Agreement and violation of the Texas anti-dilution statute. Accordingly, Defendants' partial motion to dismiss (Dkt. 7) is DENIED as to these claims. Defendants' motion is GRANTED as to Gabbanelli's claim for breach of the 2014 Settlement Agreement, and Gabbanelli's motion for leave to amend its complaint (Dkt. 10) is GRANTED. Gabbanelli is ORDERED to file an amended complaint within twenty (20) days of this order.

Signed at Houston, Texas on August 6, 2019.

_____
Gray H. Miller
Senior United States District Judge